UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ROBERT J. LARRY, | Case No. 3:16-cv-1892-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| STATE OF OREGON, by and through OREGON DEPARTMENT OF HUMAN SERVICES, by and through OREGON VOCATIONAL REHABILITATION SERVICES; TRINA LEE, Director of Oregon Vocational Rehabilitation Services; ROBERT COSTELLO, DONNA DUFF, TRACY SCHAFFER, SARAH SANDRUDDIN, MARK MASTHOFF, JOHN DOES 1-10, all in their individual and official capacities; DR. ROBINANN COGBURN, and DR. LUAHNA UDE, Contractors of Oregon Vocational Rehabilitation Services, in their professional and individual capacities, | |
| Defendants. | |

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Robert J. Larry ("Larry"), filed this action against various state agencies and employees alleging claims for disability discrimination and failure to accommodate in violation of Section 504 of Rehabilitation Act of 1973 (the "Act"), and common law claims for intentional infliction of emotional distress ("IIED") and vicarious liability. Currently before the court is the defendants' motion to dismiss the individual defendants, with the exception of Trina Lee, the Director of the Oregon Department of Human Resources ("Lee").

The court finds Larry has alleged a viable claim for damages against the individual defendants in both their official and individual capacities based on a nucleus of facts common to his federal and state claims. Accordingly, the individual defendants are properly identified as defendants, they are not entitled to protection under the Eleventh Amendment, and this court has supplement jurisdiction over the IIED claim asserted against them. The defendants' partial motion to dismiss is[1] denied.

*Background*

In the First Amended Complaint filed on April 14, 2017 (the "Complaint"), Larry alleges he is disabled due to Post Traumatic Stress Disorder and physical ailments affecting his neck, shoulder, and lower back. (First Am. Compl., ECF No. 41 ("Compl."), ¶ 20.) In January of 2013, Larry sought assistance from defendant Oregon Vocational Rehabilitation Services (the "Agency"), an agency of defendant Oregon Department of Human Services (the "Department"). (Compl. ¶ 6.)

---

[1] The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c)(1).

While Larry alleges his claims are based on "events occurring on September 26, 2014[,] and ongoing," he provides substantial background of his interactions with the Agency arguably relevant to his claims. (Compl. at 1.)

After the first meeting, the Agency gathered medical records necessary to make a determination on Larry's eligibility for Agency programs. (Compl. ¶ 20.) When Larry requested a copy of these records, Larry's counselor "became defensive," and, moving forward, refused to answer simple questions about employments options available to Larry. (Compl. ¶¶ 21, 22.) At Larry's request, defendant Donna Duff, Agency Branch Manager ("Duff"), agreed to reassign Larry to a new counselor, defendant Tracy Schaffer ("Schaffer"), in April, 2013. (Compl. ¶ 23.) Larry alleges Schaffer was also reluctant to provide information on available employment options. (Compl. ¶ 24.) As a result, Larry attended an Agency regional meeting in Portland in May 2013, and eventually obtained details on the services available to Agency clients. (Compl. ¶ 27.) However, Duff and Schaffer were upset Larry went behind their backs for the information and began retaliating against him. (Compl. ¶ 27.)

While Larry thought he was working toward certification for self-employment as an adult care home provider, Schaffer informed him he was required to abide by the Agency's Self-Employment Guidelines ("Guidelines") and his work to date would not count toward certification. (Compl. ¶ 29.) Schaffer provided Larry a copy of the Guidelines which, according to Larry, Duff and Schaffer did not fully understand. (Compl. ¶¶ 29, 30.) In various communications to Duff and Schaffer, Larry expressed concern, and provided proof, they were giving him the "run-a-rounds." (Compl. ¶ 30.) At a June 12, 2014 meeting, Schaffer told Larry she thought he was "lawyering up," and asked him to stop sending letters as she and Duff did not have time to read them. (Compl. ¶ 30.)

When Schaffer informed Larry the Guidelines required a physical capacity test and psychological evaluation, Larry expressed frustration he was just now being informed of these requirements. (Compl. ¶ 31.) Larry thought Schaffer and Duff were trying to get him kicked out of the program based on his complaints about them. (Compl. ¶ 31.) Larry took and passed the physical capacity test and attended a psychological evaluation on July 25, 2014, with defendant Robinann Cogburn, Ph.D. ("Dr. Cogburn"). (Compl. ¶ 30.)

Larry characterized the evaluation as "one of the worst experiences of his entire life" and thought Dr. Cogburn made it apparent from the beginning that she "was there to fulfill an agenda, other than her own; she made it very clear her only interest was for [the Agency]." (Compl. ¶ 32.) Larry questioned Dr. Cogburn's qualifications to interpret standardized testing of African-American patients and felt she was uncomfortable discussing race. (Compl. ¶ 33.) When Larry complained about Duff and Schaffer, Dr. Cogburn indicated she was not interested in hearing his complaints about the Agency. (Compl. ¶ 34.) Similarly, when Larry offered the fact he had successfully sued the City of Portland twice for false arrest, and tried to explain the torts that created problems for police, she told him she did not need to know this information. (Compl. ¶ 36.) Dr. Cogburn explained she had limited time for the evaluation and could not listen to everything he wanted to talk about. (Compl. ¶ 35.)

Dr. Cogburn did question Larry about his criminal case in the Dalles, Oregon, and the effect it had on him. (Compl. ¶ 36.) Larry summarized the difficulties he encountered in the two-year ordeal, including attorneys who wanted him to accept pleas and a judge who tried to make him admit to things he did not do while in open court. (Compl. ¶ 37.) Larry informed Dr. Cogburn he had been acquitted of eight of the nine charges in a bench trial and that the ordeal was emotionally draining.

(Compl. ¶¶ 30.) Dr. Cogburn questioned the truthfulness of Larry's description but refused his offer of copies of the transcript to confirm or refute his story. (Compl. ¶ 38.) When Dr. Cogburn requested a break, Larry asked the receptionist at the Agency office for a printout of an electronic copy of the Guidelines. (Compl. ¶ 39.) Larry provided the printout to Dr. Cogburn when she returned as proof Schaffer had lied when she told him an electronic copy of the Guidelines did not exist. (Compl. ¶ 40.)

During the subsequent lunch break, Larry decided he did not trust Dr. Cogburn and should record the rest of the evaluation. (Compl. ¶ 42.) Dr. Cogburn agreed to reschedule the remainder of the evaluation to allow both parties to record it. (Compl. ¶ 43.) However, Dr. Cogburn forgot to bring her recorder to the next appointment and, rather than again reschedule, attempted to convince Larry recordings could be a distraction and a violation of confidentiality. (Compl. ¶ 43.) Larry agreed to complete the evaluation without recording it. (Compl. ¶ 44.) At the end of the testing, Larry reported to Dr. Cogburn he was disappointed with her overall lack of concern for his well-being and his belief she manipulated the outcome of the tests, and pointed out misleading information in her Informed Consent form. (Compl. ¶ 45.) Larry asserted his right to withdraw his consent to share her findings with the Agency in the event he found errors in her report. (Compl. ¶ 45.) They eventually agreed Dr. Cogburn would present and explain her findings to him in a recorded, confidential meeting and allow Larry to correct inaccuracies. (Compl. ¶ 46.) A second recorded meeting would then be held with Larry, Dr. Cogburn, Schaffer, and Duff. (Compl. ¶ 46.)

Larry appeared for the first meeting scheduled on September 26, 2014, and was surprised to find Schaffer and Duff in attendance with Dr. Cogburn. (Compl. ¶ 47.) During a lengthy discussion about the change in plans, Schaffer at first denied any knowledge of the agreement between Dr.

Cogburn and Larry to have an initial confidential meeting between the two of them. (Compl. ¶ 48.) Upon prompting by Dr. Cogburn, Schaffer conceded she was aware of the previous arrangement, leaving Larry feeling devastated and betrayed. (Compl. ¶ 48.) Despite Dr. Cogburn's encouragement to allow a discussion of his psychiatric evaluation with everyone present, Larry ended the meeting, explaining he wanted a copy of the report and a chance to review it with Dr. Cogburn privately. (Compl. ¶ 49.) Duff then inquired if Larry was interested in discussing employment opportunities. (Compl. ¶ 50.) Larry declined the offer, stating he felt deceived and betrayed, and ended the meeting. (Compl. ¶ 50.)

Schaffer informed Larry in mid-October 2014 she was closing his file based on his representation "in our meeting of 9/24/14 that you do not want to pursue other employment at this time." (Compl. ¶ 51.) Larry denies making such statement, claiming Schaffer fabricated it to cover her own improper activity. (Compl. ¶ 51.) In letters dated October 24, 2014, Larry objected to the closing of his files, characterized Duff, Schaffer, and Dr. Cogburn's activities as tortious, and requested a written explanation of the justification for the closure of his file. (Compl. ¶ 52.)

After requesting several hearings, Larry eventually participated in a hearing with an Agency Hearings Representative, who advised him "neither Schaffer nor Duff knew what they were doing and that [Larry's] file should never have been closed." (Compl. ¶ 53.) Dr. Cogburn has consistently refused to meet with Larry to confidentially discuss her findings. (Compl. ¶ 54.) Larry alleges he has exhausted the Agency's grievance process but was denied his right to a fair and impartial hearing due to continued discriminatory policies. (Compl. ¶ 55.) He claims the defendants' conduct caused him to suffer "irreparable mental distress and psychological abuse." (Compl. ¶ 56.) Larry seeks economic damages in the amount of $2,000,000, compensatory and punitive damages in amounts

to be determined at trial, and reasonable attorney fees, costs, and expenses. (Compl. at 19.)

*Legal Standard*

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2) (2017). A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. While the court must assume that all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, a plaintiff must set forth a plausible claim for relief – a possible claim for relief will not do. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678); *Sheppard v. David Evans and Assoc.*, No. 11-35164, 2012 WL 3983909 at *4 (9th Cir. Sept. 12, 2012) ("The Supreme Court has emphasized that analyzing the sufficiency of a complaint's allegations is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679)).

In cases involving a plaintiff proceeding *pro se*, the court construes the pleadings liberally and affords the plaintiff the benefits of any doubt. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir.

1992)("[F]ederal courts liberally to construe the 'inartful pleadings' of pro se litigants."). In other words, courts hold *pro se* pleadings to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In addition, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *Karim-Panahi*, 839 F.2d at 623-624.

*Discussion*

The defendants move to dismiss the individual defendants, with exception of Lee, conceding the State of Oregon, the Agency, the Department, and Lee (collectively the "State Defendants") are proper defendants. In addition to Duff, Schaffer, Costello, and Dr. Cogburn referenced above, Larry also names as defendants Robert Costello, Agency Branch Manager and/or Regional Supervisor; Sarah Sandruddin, Agency counselor; Mark Masthoff, an Agency dispute resolution coordinator; and Luahna Ude, Ph.D., a contractor and service provider for the Agency (collectively the "Individual Defendants").

I.  Preliminary Procedural Matter

Larry also names "John Does 1-10" as defendants. The Ninth Circuit has held:

> [a]s a general rule, the use of 'John Doe' to identify a defendant is not favored. However, situations arise, such as the present, where the identity of alleged defendants will not be known prior to the filing of a complaint. In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.

*Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Larry has had ample of time to discover the names of the John Doe defendants and has not amended his complaints to add them. Accordingly, the court dismisses the John Doe defendants.

II.  Oregon Tort Claims Act

Larry first two claims allege violations of the Act and are asserted against the State Defendants only.  Similarly, Larry's Fourth Claim for Relief for vicarious liability is against only the State Defendants.  Larry seeks to hold the Individual Defendants liable solely on his common law IIED claim found in his Third Claim for Relief.  The State Defendants do not contest the court's jurisdiction over the claims under the Act or supplemental jurisdiction over the common law vicarious liability claim asserted against them.  Rather, the only issue before the court is whether it has jurisdiction over the Individual Defendants with regard to Larry's IIED claim.  The Individual Defendants contend Larry's claim against them must be dismissed based on the Oregon Tort Claims Act, Eleventh Amendment immunity, or a lack of jurisdiction.[2]

The Individual Defendants argue the Oregon Tort Claims Act requires the substitution of the State of Oregon (the "State") as defendant in Larry's Third Claim for Relief.  Under the relevant provision of the Oregon Tort Claims Act,[3] an officer, employee, or agent of a public body may be held personally liable on a tort claim when the requested prayer for relief exceeds the damages cap identified in OR. REV. STAT. 30.271, 30.272, or 30.273.  *See* OR. REV. STAT. 30.265(4) (2015) ("If an action is filed against a an officer, employee, or agent of a public body, and the plaintiff alleges damages in an amount equal to or less than the damages allowed under ORS 30.271, 30.272, or 30.273, the court upon motion shall substitute the public body as the defendant."). OR. REV. STAT.

---

[2]The Individual Defendants also moved to be dismissed from Larry's claims under the Act, arguing the proper defendants to such claims are the public entities and the head of the department, agency, or unit.  Larry's claims under the Act are against the State Defendants only.  Consequently, the Individual Defendants' motion for partial dismissal of this claim is not well taken and is denied as moot.

[3]The Individual Defendants quote an old, irrelevant version of OR. REV. STAT. 30.265(1).

30.271 applies to claims against the State, its agencies, and its employees, and imposes a $2,000,000 limit for causes of action arising on or after July 1, 2014, and before July 1, 2015. OR. REV. STAT. 30.271(2)(f) (2015).

In his Third Claim for Relief, Larry alleges he suffered economic damages in an amount to be determined at trial. (Compl. ¶ 68.) He also seeks damages for "severe emotional distress, loss of dignity and self esteem, anxiety, humiliation, and loss of enjoyment of life," and punitive damages in amounts to be determined a trial. (Compl. ¶¶ 69, 70.) A plaintiff's failure to specify the amount of damages he seeks prevents the court from determining if OR. REV. STAT. 30.362(3) applies, and thus defeats a request for substitution under that provision. *Achar-Winkels v. Lake Oswego School Dist.*, No. 3:15-cv-00385-YY, 2017 WL 2291338, at *9 (D. Or. May 25, 2017). Even assuming Larry has adequately identified the damages he seeks against the Individual Defendants in his prayer, Larry alleges he suffered economic damages in the amount of $2,000,000, and also seeks compensatory damages and punitive damages to be determined at trial, and reasonable attorney fees, costs, and disbursements. Larry clearly alleges $2,000,000 in economic damages alone. The requested additional compensatory or punitive damages would exceed the limit. Consequently, under either scenario, Larry is entitled to proceed against the Individual Defendants on his IIED claim. The Individual Defendants' motion to substitute under the Oregon Tort Claims Act is denied.

II. Eleventh Amendment Immunity

"The Eleventh Amendment creates an important limitation on federal court jurisdiction, generally prohibiting federal courts from hearing suits brought by private citizens against state governments without the state's consent." *Sofamor Danek Group v. Brown*, 124 F.3d 1179, 1183 (9th Cir. 1997) (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)). Eleventh Amendment immunity

extends to suits against state agencies. *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). The Eleventh Amendment also bars suits against state officers who are sued in their official capacity for damages or other retroactive relief, but allows suits for prospective declaratory or injunctive relief against state officials acting in their official capacity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 89 (1989). However, the Eleventh Amendment does not bar claims for damages against a state official in his personal capacity. *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992). As explained by the Supreme Court:

> The 11th Amendment was not intended to afford [state officials] freedom from liability in any case where, under color of their office, they have injured one of the state's citizens. To grant them such immunity would be to create a privileged class, free from liability for wrongs inflicted or injuries [threatened]. Public agents must be liable to the law, unless they are to be put above the law.

*Hopkins v. Clemson Agr. College of South Carolina,* 221 U.S. 636, 643 (1911). Thus, state officials acting in their individual capacities are not shielded from liability under the Eleventh Amendment and may be subject to suits seeking money damages.

Larry argues Eleventh Amendment immunity does not apply as the Individual Defendants acted outside the scope of their employment and in their individual capacities. In the caption of the complaint, Larry indicates he is suing the Individual Defendants in their individual and official capacities. (Compl. at 1.) Moreover, in his Third Claim for Relief, Larry alleges the Individual Defendants "acted outside the scope of their employment." (Compl. ¶ 67.) However, Larry also specifically alleges: "[a]ll incidents occurred while Defendants Lee, Costello, Duff, Schaffer, Sandruddin, Masthoff, Dr. Gogburn, Ph.D. and Dr. Luahna Ude, Ph.D. were working in their official capacities or as a [Agency] contractor and service provider for the [Agency]." (Compl. ¶ 16.) At this motion to dismiss stage, the court must view the allegations in the Complaint in a light most

favorable to Larry. Consequently, the court finds Larry is suing the Individual Defendants individually and seeking money damages against them. The Individual Defendants are not entitled to protection under the Eleventh Amendment and their partial motion to dismiss on this ground is denied.

III. Supplemental Jurisdiction

The Individual Defendants appear to argue that because they are not defendants to the claims establishing federal jurisdiction – those alleging violation of the Act – the court lacks jurisdiction over the state common-law claim asserted against them. Larry asserts when a court has jurisdiction over a claim, such as a claim raising a federal question, the court's supplemental jurisdiction extends to all claims substantially related to the claim creating jurisdiction.

Supplemental jurisdiction is governed by 28 U.S.C. §1367(a), which provides, in pertinent part:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

This provision makes clear the relevant question is whether the federal and state law claims are sufficiently related. A state law claim is considered part of the same "case or controversy" as a federal claim when "they derive from a common nucleus of operative fact" and "are such that [a plaintiff] would ordinarily be expected to try them all in one proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). When this standard has been met and the federal claim is properly before the court, "the court has the power to assert supplemental jurisdiction over those supplemental claims even if they are state law claims asserted against a defendant over whom the

court otherwise lacks original jurisdiction." *Ortmayer v. Union Bank of Cal., N.A.*, No. 04-1580-HU, 2005 WL 433703, at *5 (D. Or. Feb. 24, 2005) (citing *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1174 (9th Cir. 2002)).

As alleged in the Complaint, Larry's claims under the Act and his IIED claim arise from a common nucleus of operative facts – the Individual Defendants' interactions with Larry. Larry would ordinarily be expected to try these claims in one proceeding. Consequently, the court has supplemental jurisdiction over the IIED claim against the Individual Defendants even if they were not parties to his claims under the Act. The Individual Defendants' motion to dismiss is denied on this ground as well.

*Conclusion*

The Individual Defendants' partial motion (ECF No. 45) to dismiss is DENIED.

DATED this 7th day of August, 2017.

          /s/ John V. Acosta
          JOHN V. ACOSTA
        United States Magistrate Judge